**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IRVING W. FOREMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 05 C 3372** |
| | ) | |
| **PRA III, LLC and PORTFOLIO** | ) | **Judge Rebecca R. Pallmeyer** |
| **RECOVERY ASSOCIATES, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

In this action, Plaintiff Irving W. Foreman asserts that the debt collection practices of Portfolio Recovery Associates, LLC ("PRA LLC") and PRA III, LLC ("PRA III") (collectively, "Defendants") are "false, deceptive, misleading, and unfair" in violation of the Fair Debt Collection Practices Act ("FDCPA"), specifically 15 U.S.C. §§ 1692e(2), (5) and (10) and 15 U.S.C. § 1692f. Plaintiff claims that Defendants engage in two particular debt collection practices that violate the FDCPA: (1) Defendants' alleged practice of filing collection actions in state court and attaching affidavits in which Defendants' employees purport to have knowledge of the alleged debtor's "account balance," when in fact Defendants have no documents establishing the particular debtor's indebtedness; and (2) Defendants' alleged policy and practice of bringing state court collection actions without the means to prove a particular debtor's indebtedness. Plaintiff now moves for class certification. (Pl. Mem. in Support of Class Cert. at 1.)[1] For the reasons explained here, Plaintiff's motion for class certification is denied.

---

[1]    All citations to "Pl. Mem. in Support of Class Cert." refer to Plaintiff's *corrected* memorandum, filed on September 19, 2006.

## BACKGROUND

### 1.    The Fair Debt Collection Practices Act

A central purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692e.  In relevant part, § 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" and lists the following among examples of prohibited conduct: the false representation of "the character, amount, or legal status of any debt"; "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken"; and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* §§ 1692e(2), (5) & (10).  Similarly, § 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."  Unconscionable and unfair conduct includes collecting any amount (e.g., interest, fee, other charges) unless the amount is "expressly authorized by the agreement creating the debt or permitted by law."  *Id.* § 1692f(1). Courts view FDCPA claims "through the eyes of an 'unsophisticated debtor.'" *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 758 (7th Cir. 2006) (quoting *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994)).

### 2.    Defendant PRA III's Collection Action Against Plaintiff in Cook County

PRA LLC is a subsidiary of Portfolio Recovery Associates, Inc., a company that is not a party to this action. (Compl. ¶ 7; Answer ¶ 7.)[2] Portfolio Recovery Associates purchases, collects, and manages portfolios of defaulted consumer receivables, which are individuals' unpaid obligations to creditors such as banks, credit unions, and retail merchants. (Compl. ¶ 8.) According

---

[2]    Plaintiff alleges that PRA III is also a subsidiary of Portfolio Recovery Associates, Inc., but Defendants deny this fact and state that PRA III merged into PRA LLC in November of 2003.  (Compl. ¶ 7; Answer ¶ 7.)  Defendants' corporate structure is not material to the court's decision on whether to certify the proposed class.

to Plaintiff, PRA III and other entities obtain title to charged-off debts, and PRA LLC then manages and collects these charged-off debts.[3] (*Id.* ¶¶ 9, 10.) Among the methods used to collect the debts is the filing of lawsuits. (Pl. Mot. for Class Cert. at 2.)

At some point prior to October 7, 2003, PRA III obtained title to a debt that Plaintiff allegedly owed to Citibank in the amount of $5,575.22. (Compl. ¶ 18.) Plaintiff denies that he owed this debt. (Pl. Mot. for Class Cert. at 2.) PRA LLC managed the collection of this alleged debt, and, on October 7, 2003, PRA LLC sent Plaintiff a letter, on behalf of PRA III, demanding payment. (Compl. ¶ 18; Answer ¶ 18; 10/7/03 Letter, Ex. A to Compl.) On July 1, 2004, PRA III filed suit against Plaintiff in the Circuit Court of Cook County, Illinois, in a further attempt to collect the debt ("Cook County case"). (Compl. ¶ 19.) PRA III sued Plaintiff on an "account-stated" theory of damages. (Pl. Mot. for Class Cert. at 3.)[4] Attached to PRA III's complaint in the Cook County case was an affidavit executed by Elaine Lark, an employee of PRA III, stating that she "[had] knowledge of the account balance" and that the amount due was "taken/calculated from the original books and records" of PRA III. (Ex. C to Compl.)

PRA III filed an amended complaint against Plaintiff in the Cook County case on October 5, 2004 and attached an account statement that, in its address box, contains city, state, and zipcode information but lists Plaintiff's street address as "ATTNY ACCOUNT-CODE=AGE2"; Plaintiff claims not to have seen this statement until it was attached to PRA III's state court complaint as an exhibit, and there is no indication in the record that he received it on any earlier date. (Ex. D to Compl.) Plaintiff also claims that, at the time PRA III filed the collection action, Defendants had no information regarding whether Plaintiff's alleged agreement with Citibank was written or oral, which,

---

[3]     "Charged-off" debts are those that a creditor treats as losses or expenses because it is unlikely to collect payment. *See* BLACK'S LAW DICTIONARY 227 (7th ed. 1999).

[4]     The court explains the "account stated" theory in detail below. (*See infra* Section F.ii.)

in an Illinois contract action, varies the statute of limitations period. (Compl. ¶¶ 27-28.) In this action, Plaintiff notes that his alleged debt was charged-off no later than 2003, and, because Defendant PRA III did not sue Plaintiff until 2004, the suit was brought after both the five-year statute of limitations for oral contracts and the ten-year statute of limitations for written contracts had expired. (Pl. Reply in Support of Class Cert. at 11.) Plaintiff moved to dismiss the Cook County case because PRA III had not attached the credit card agreement or assignment agreement to the complaint. (Def. Opp'n to Class Cert. at 3.) The Circuit Court of Cook County granted Plaintiff's motion to dismiss PRA III's action. (Compl. ¶ 29.) According to Plaintiff, Defendant PRA III was allowed to file a second amended complaint in the Cook County case but did not do so. (*Id.*) Plaintiff then moved to dismiss the Cook County case, and, on May 16, 2005, the attorneys for PRA III in the Cook County case voluntarily dismissed the suit. (*Id.* ¶ 30.)

### 3. Defendants' Practice of Filing State Collection Actions

According to Plaintiff, Defendants routinely file lawsuits in Illinois courts to collect credit card debt. (*Id.* ¶ 31.) Defendants filed approximately 300 such collection actions that meet the temporal requirements that are part of the class definition Plaintiff proposes in this action, which includes those lawsuits that Defendants filed or prosecuted (or caused to be filed or prosecuted) that were "filed or pending on or after June 7, 2004 and June 27, 2005." (Pl. Mem. in Support of Class Cert. at 7.) Plaintiff alleges that Defendants engage in "deceptive acts and practices" and "unfair practice[s]," in violation of the FDCPA, when they file lawsuits under one or more of the following circumstances:

- when the debt was charged-off more than five years before the filing of a lawsuit and Defendants do not have the original or an image of the contract and also do not have any evidence that the debtor actually signed a contract, which is necessary to determine whether the contract was written or oral (e.g., credit cards issued over the telephone);
- when Defendants do not have the original or an image of the account agreement to attach the complaint as required by Illinois law or any means of proving its terms;
- when Defendants do not have the original or an image of any account statements or

4

account histories, but allege that an "account stated" exists; or

• when Defendants attach affidavits to state court complaints in the form of Exhibit C to Plaintiff's complaint.

(Compl. ¶¶ 31, 33, 35.)

Plaintiff has compiled approximately eighty-five complaints that Defendants filed during the proposed class period that contain affidavits similar to the one executed by Elaine Lark that PRA (executed by III attached to its complaint filed against Plaintiff in Cook County. (Pl. Mem. in Support of Class Cert. at 7; Ex. B to Pl. Mem. in Support of Class Cert.) Plaintiff contends that these affidavits are false and misleading because "virtually in all cases the affiant cannot possibly know any given 'account balance'" given Defendants' "meager account records." (Pl. Mot. for Class Cert. at 3.) According to Defendants, when a pool of defaulted debts are purchased, the creditor/seller sends Defendants electronic data specifying the balance due, account numbers, debtor names, and locations. (Def. Opp'n to Class Cert. at 3, citing Declaration of Philip J. Freebus ¶ 3, Ex. A to Def. Opp'n to Class Cert.) Sometimes Defendants are sent copies of account documents (e.g., credit applications, agreements, account statements); and, at times, Defendants can obtain supporting documents from the seller, but debt purchase agreements often do not require the creditor/seller to give Defendants all of the account documents the creditor/seller has with respect to the debts Defendants have purchased. (Def. Opp'n to Class Cert. at 3, citing Freebus Decl. ¶ 4.)

Plaintiff also claims that, in a random sample of 10% of the approximately 300 state court actions filed during the proposed class period, eight of the files contained no documents whatsoever, and only one out of the thirty-one accounts contained both a signed contract and "an account statement containing a balance which the consumer had agreed tacitly or expressly was in fact due and owing"; in other words, twenty-two files lacked one or both of the aforementioned documents. (Pl. Mem. in Support of Class Cert. at 7; Ex. C to Pl. Mem. in

Support of Class Cert.) According to Defendants, the sample files included "either a signed application, signed credit agreement, itemization report, or account statements for twenty-four of the thirty-one" accounts, and "included no documents for only seven of the thirty-one" accounts. (Def. Opp'n to Class Cert. ¶ 4.)[5]

Plaintiff now moves to certify a class that Plaintiff defines as all persons in Illinois against whom either Defendants have filed or prosecuted (or caused to be filed or prosecuted) a lawsuit to collect a debt; the lawsuit must have been "filed or pending on or after June 7, 2004 and June 27, 2005"; and, one of more of the following must apply to the action:

- the debt at issue was charged-off over five years prior to filing of the lawsuit and Defendants did not have the original or an image for a contract signed by the purported debtor and had no evidence that the debtor actually signed a contract;
- Defendants did not have the original or an image of the account agreement to attach to the complaint as required, or any means of proving its terms;
- Defendants did not have an original or an image or any statement of account sent to the debtor in the ordinary course of business, or an account history, but alleged that an "account stated" exists; or
- Defendants attached an affidavit to the complaint in the form of Exhibit C to Plaintiff's complaint in this action (the Elaine Lark affidavit).

(Pl. Mot. for Class Cert. at 1-2.)

## DISCUSSION

### 1.    Standard for Class Certification

The FDCPA expressly provides for class actions. *See* 15 U.S.C. § 1692k(a)(2)(B). Class certification is appropriate when the class action satisfies all of the prerequisites under Federal Rule of Civil Procedure 23(a) and at least one subsection of Rule 23(b). *Amchem Prods., Inc. v.*

---

[5]     After accounting for an error in labeling documents, Defendants assert that only seven of the thirty-one accounts sampled contained no documents. (Def. Opp'n to Class Cert. at 4-5.) Plaintiff, who originally contended that eight accounts contained no documents, agrees with Defendants' correction. (Pl. Reply. in Support of Class Cert. at 6.)

*Windsor*, 521 U.S. 591, 614 (1997).  It is Plaintiff's burden to show that the requirements for class certification are met.  *Id.*  Under Rule 23(a), Plaintiff must demonstrate: (1) that the class is so large that joinder is impractical ("numerosity"); (2) that questions of law or fact are common to the class ("commonality"); (3) that the class representative's claim or defenses are typical of the claims or defenses of the class ("typicality"); and, (4) that the representative party will fairly and adequately protect the interests of the class ("adequacy").  FED. R. CIV. P. 23(a).  In addition, the class must meet one of the requirements of Rule 23(b).  According to Plaintiff, the putative class should be certified under Rule 23(b)(3), which requires Plaintiff to show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to the other available methods for the fair and efficient adjudication of the controversy."  FED. R. CIV. P. 23(b)(3).

This court has "broad discretion" to determine when class certification is appropriate, *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998), but will not consider the merits of the underlying action in deciding whether or not to certify the class.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).  If evidence relevant to class certification is "intertwined with the merits," however, the court's decision "may involve some consideration of the factual and legal issues" underlying the claim.  *See Williams v. Ford Motor Co.*, 192 F.R.D. 580, 584 (N.D. Ill. 2000) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 & n.12 (1978); *Eggleston v. Chicago Journeyman Plumbers' Local Union*, 657 F.2d 890, 895 (7th Cir. 1981)).

Plaintiff contends that all of the requirements for class certification are met in this case.  (Pl. Mem. in Support of Class Cert. at 6-13.)  Defendants argue that this case is not a typical FDCPA class action and that the court should not certify the class for a number of reasons.  According to Defendants, because membership for each class member depends on the information Defendants had when filing a collection action against each potential class member, the claim is not subject to

class-wide proof and requires an individualized inquiry, which renders the proposed class unidentifiable. (Def. Opp'n to Class Cert. at 2.) Defendants further contend that the proposed class does not meet Rule 23(a)'s requirements of commonality and typicality, or the predominance requirement of Rule 23(b)(3). (*Id.*) The court addresses whether the proposed class meets each of the necessary class certification requirements in turn.

## 2.      Class Certification Requirements

### A.      Identifiability of Proposed Class

Before turning to the explicit requirements of Rule 23, the court pauses to examine Plaintiff's proposed class definition. While a "definiteness" requirement is not expressed in Rule 23, the Seventh Circuit has accepted that the definition of a proposed class must be "sufficiently definite to permit ascertainment of the class members . . ." *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977-78 (7th Cir. 1977). This requirement is necessary because of the binding effect of class actions on unnamed class members. *Elliott v. ITT Corp.*, 150 F.R.D. 569, 573-74 (N.D. Ill. 1992). A class is identifiable if the class members can be ascertained based on objective criteria. *Nat'l Org. for Women, Inc. v. Scheidler*, 172 F.R.D. 351, 357 (N.D. Ill. 1997).

Defendants contend that the class cannot be identified because the court will have to conduct individualized inquiries to determine if each potential class member actually falls within the class. (Def. Opp'n to Class Cert. at 10-11.) According to Plaintiff, all that is required to ascertain the class members is a ministerial inspection of Defendants' files, and no individualized inquiry into the merits of the action is required. (Pl. Reply in Support of Class Cert. at 8-9, 14-15.) After examining each of the four bases upon which an individual may qualify for the proposed class under Plaintiff's proposed definition, the court finds that the definition provides sufficient objective criteria and that no individualized inquiry into the merits of the action is required to determine the class members.

All four of the bases upon which an individual may qualify for the proposed class can be ascertained by examining the Defendants' file on each of the potential class members for the presence of particular documents or information and other objective criteria. The first basis requires knowledge of whether the debt at issue was charged-off more than five years prior to Defendants' filing of a state court collection action, and whether Defendants have in their file the original or an image of the contract signed by the purported debtor or any other evidence that the debtor signed a contract. The second basis requires an examination of whether Defendants have the original or an image of the account agreement or any means of proving its terms. The court acknowledges that a class definition that bases class membership, in part, on the fact that Defendants did not have "any means or proving [the] terms" of the account agreement or on whether there is evidence that the debtor signed an account agreement could be read as too vague to permit a determination of who qualifies as a class member. In context, however, where the only available information from which to determine class membership consists of Defendants' account files, it is possible to make an objective determination whether any document in Defendants' account files sets forth the terms of the account agreement or demonstrates that the debtor signed an account agreement.[6]

---

[6]    In explaining why a class should not be certified in this case, Defendants repeatedly urge the court to consider that Defendants may have been able to obtain more information about particular accounts that were the subject of collection suits by requesting information from the creditor/seller. (*E.g.,* Def. Opp'n to Class Cert. at 7, 8, 11.) In the context of Defendants' argument that the class is not identifiable, Defendants contend that in order to ascertain the class members, an inquiry will have to be made beyond the Defendants' files; according to Defendants, what information Defendants could have obtained from third parties and whether the available materials prove the issues in the class definition are both relevant considerations. The court does not view the account information that Defendants could have obtained before filing but chose not to obtain as relevant. In addition to the fact that Defendants purchased Plaintiff's account "as is," (Pl. Mem. in Support of Class Cert. at 8), the account files, in their current state, contain all of the documents Defendants had at the time they filed each collection action. In this action, Plaintiff claims that Defendants violated the FDCPA by "*filing* lawsuits" in certain circumstances. (Compl. ¶ 33) (emphasis added.) Therefore, in deciding whether or not to certify Plaintiff's proposed class, the court will not consider the impact of information that was not in Defendants' possession at the time of filing each state court collection action, whether or not Defendant could readily have obtained that information.

The final two bases upon which an individual may qualify as a class member are clearly objective. First, the parties and the court can easily assess whether Defendants, in their state court collection action against a potential class member, attached an original or an image of a statement of account sent to the debtor or an account history. Likewise, the parties and the court can also easily assess whether Defendants attached an affidavit against each potential class member in the related state court collection action that is in the same form as the affidavit attached as Exhibit C to Plaintiff's complaint in this action.

Defendants cite *Pastor v. State Farm Mutual Automobile Insurance,* No. 05-C-1459, 2005 WL 2453900 (N.D. Ill. Sept. 30, 2005), to support their argument that a class should not be certified where, as in this case, individualized inquiries are necessary to determine if a member falls within a class. (Def. Opp'n to Class Cert. at 10-11.) In *Pastor*, the plaintiff contended that the defendant had wrongfully failed to pay benefits due to holders of auto insurance policies; the plaintiff moved to certify a class that included automobile policyholders who had received payment for a claimed loss but were not paid $10 per day for each day their car was unusable. 2005 WL 2453900, *2. The court found this definition to be inadequate because, to determine class membership, the court would have "to conduct an inquiry into the merits of each class member's claim" and would have to inquire into whether a putative class member's car was unusable. *Id.* at *3. The only other case cited by Defendants, *Kenro, Inc. v. Fax Daily, Inc.*, similarly found error with a class definition that "would require the court to address the central issue of liability." 962 F. Supp. 1162, 1169 (S.D. Ind. 1997). The plaintiff in *Kenro* alleged that the defendants transmitted unsolicited advertisements by fax. *Id.* at 1163. Under the proposed class definition, the court would have to conduct individual inquiries to determine whether each potential class member had invited or given permission to defendants to fax the advertisements. *Id.* at 1169. The court pointed out that the plaintiff had "simply incorporated the language of the statutory prohibition into its class definition," and found the

definition insufficient because, in determining the class membership, the court would address the defendants' liability. *Id.*

Neither of these cases bind this court, but the court has nevertheless considered them and finds them factually distinct from this case. The *Pastor* and *Kenro* courts did not find the respective class definitions insufficient solely on the basis that inquiry about the circumstances of individual class members was necessary to determine if each potential class member actually fell within the proposed class, which is the case here. Rather, the courts were clear, in each case, that the individualized inquiry necessary under the proposed class definitions was tantamount to evaluating the merits of each class members' claim. *Kenro*, 962 F. Supp. at 1169; *Pastor*, 2005 WL 2453900, at *3. In this case, unlike in *Kenro*, the class definition does not so closely track the language of the relevant statute—here, the FDCPA—as to indicate that evaluating class membership will be equivalent to deciding the merits of class members' claims. Further, Defendants do not argue that the individualized inquiry that is necessary to determine class membership in this case amounts to determining the merits of the action. (Def. Opp'n to Class Cert. at 10-11.) Even after the class members are ascertained, it will still be necessary for the court to examine whether Defendants' practices that serve as the basis for class membership—e.g., filing a collection action with no evidence of the account agreement—constitutes an FDCPA violation. Thus, the court declines to conclude that the individualized inquiry that is necessary to determine class membership in this case amounts to determining the merits of the action.

### B.    Numerosity

The court will not certify a class unless the members of the class are "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Plaintiffs do not need to specify the exact number of persons in the class to satisfy the numerosity requirement. *See Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir. 1989) (citing *Vergara v. Hampton*, 581 F.2d 1281,

1284 (7th Cir. 1978)). Rather, the court "is entitled to make common sense assumptions in order to support a finding of numerosity." *Peterson v. H & R Block Tax Servs., Inc.*, 174 F.R.D. 78, 81 (N.D. Ill. 1997) (citations and internal quotations omitted). In this case, such assumptions support the conclusion that the proposed class meets the numerosity requirement.

First, as Plaintiff observes, Defendants filed approximately 300 lawsuits during the class period, and in at least eighty-five of the 300 lawsuits Defendants attached an allegedly misleading affidavit. (Pl. Mem. in Support of Class Cert. at 7.) Second, Plaintiff claims that, of the thirty-one randomly sampled accounts selected from the 300 files on which Defendants sued, seven of the account files contained no documents whatsoever, and all but one of the other files lacked either a signed agreement or an account statement, or both. (*Id.*; Pl. Reply. in Support of Class Cert. at 6.) Lastly, because accounts were sold to Defendants "as is," Plaintiff urges, Defendants could not have had the means of obtaining documentation sufficient to support their collection actions against Plaintiff and other potential class members. (Pl. Mem. in Support of Class Cert. at 8.)[7]

Defendants characterize the glass as much more than half full; they point to the twenty-four of the thirty-one randomly sampled accounts in which, they claim, the account documents included "either a signed application, signed credit agreement, itemization report, or account statements." (Def. Opp'n to Class Cert. at 4.) The court need not explore the parties' views of the Defendants' files at this time; even if the individuals associated with these twenty-four accounts would not qualify as class members, as Defendants seem to suggest, numerous class members would still exist. Defendants do not dispute that in seven of the thirty-one (22.6%) randomly-sampled accounts upon which Defendants sued, the files contained no documents whatsoever. If the thirty-one randomly

---

[7] An excerpt of the agreement under which Defendants obtained title to Plaintiff's own account reflects that Defendants obtained Plaintiff's account "as is." (Ex. D. to Pl. Mem. in Support of Class Cert.) The agreement stated that the seller was not warranting the "accuracy, completeness, enforceability or validity of any of the Accounts and supporting documentation" provided to the buyer. (*Id.*)

sampled account files are representative of the approximately 300 suits filed in the proposed class period, then approximately sixty-seven (or 22.6%) of the individuals sued by Defendants in collection actions during the proposed class period would qualify as members of the proposed class.  *See Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 & n.9 (7th Cir. 1969) ("Even if the class were limited to 40 stockholders, as proposed by the court below . . . that is a sufficiently large group to satisfy Rule 23(a) where the individual members of the class are widely scattered and their holdings are generally too small to warrant undertaking individual actions.") Further, it is reasonable to assume that the class members, alleged to have previously defaulted on credit card debts, may not be in a financial position to pursue individual lawsuits.  *See Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996) (citing *Tenants Associated for a Better Spaulding v. U.S. Dep't Housing and Urban Dev.*, 97 F.R.D. 726, 729 (N.D. Ill. 1983)) (numerosity requirement met, in part, because individual class members unlikely to have financial resources to institute individual lawsuits.)  Thus, the court is satisfied that the class is numerous enough that "joinder of all members is impractical."  FED. R. CIV. P. 23(a)(1).

## C.    Commonality

Under Rule 23(a)(2), Plaintiff must demonstrate that questions of law or fact are common the class.  "A common nucleus of operative fact is usually enough to satisfy the commonality requirement."  *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992.)  Plaintiff need only show that one question of law or fact is common to the class.  *Arenson*, 164 F.R.D. at 663 (citing *In re VMS Sec. Litig.*, 136 F.R.D. 466, 473 (N.D. Ill. 1991)).

Plaintiff argues that his claim depends on the following questions of law or fact that are common to the class members: "(1) whether defendants' form affidavits and documents are false and (2) whether defendants file lawsuits for debts without the ability to prove those debts, and (3) whether defendants' form affidavits and lawsuits violate the FDCPA."  (Pl. Mem. in Support of Class

13

Cert. at 8-9.) According to Plaintiff, the only individual issue is the identification of class members, which is a ministerial determination that can be made from Defendants' records. (*Id.* at 9.) Defendants contend that resolution of the questions Plaintiff characterizes as "common" will require fact-intensive determinations "that will differ for each class member." (Def. Opp'n to Class Cert. at 6.) The court finds that the proposed class meets Rule 23's commonality requirement.

Each of the class members' claims raises the questions of whether Defendants file lawsuits to collect debts without the ability to prove the existence of a debtor's indebtedness, and whether doing so violates the FDCPA. Because class membership is not contingent on Defendants having filed a form affidavit in the underlying collection suit—that is only one of the ways an individual can qualify as a member of the putative class—the court does not agree with Plaintiff that questions about the sufficiency of the form affidavits are common to all class members. This is evidenced by the fact that Defendants filed approximately 300 suits during the proposed class period, but Plaintiff compiled only eighty-five complaints from this same period that contained what Plaintiff claims are misleading affidavits. In any case, at least one question will be common to the class members that are determined to fall within Plaintiff's proposed class definition, and that is all that Rule 23 requires. *See Arenson*, 164 F.R.D. at 663; *see also Hernandez v. Midland Credit Mgmt., Inc.*, 236 F.R.D. 406, 411 (N.D. Ill. 2006) ("The commonality bar is, in fact, quite low.") (citing *Arenson*, 164 F.R.D. at 663). Defendants' remaining objection--that resolving these common questions requires fact-intensive determinations about each class member--is more relevant to the question of whether common questions of law or fact predominate over individual questions as required by Rule 23(b)(3), and is addressed below. (*See infra* Section 2.F.)

## D.    Typicality

Rule 23(a)(3) requires that Plaintiff's claims be typical of the claims of the class. To satisfy the typicality requirement, the class representative's claims must arise "from the same event or

practice or course of conduct that gives rise to the claims of other class members." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citations and internal quotations omitted). Factual differences between the class representative's claims and those of other class members are permissible, so long as the named plaintiff's claims "have the same essential characteristics as the claims of the class at large." *Id.*

According to Plaintiff, "typicality [in this case] is inherent in the class definition" because "each of the members of each class [have] been subjected to the same collection practices as plaintiff." (Pl. Mem. in Support of Class Cert. at 9-10.) Defendants argue that Plaintiff's claims are not typical of the class because, although Plaintiff alleges that Defendants' collection suits are misleading and confusing because they lack evidence to prove debtors' liability, Plaintiff "testified that he was not confused or deceived" by the state court collection action. (Def. Opp'n to Class Cert. at 11.)

The single case Defendants cite on this issue, *Turner v. Diversified Adjustment Serv. Inc.*, is not convincing. The thrust of the class claim in *Turner* was that a mailing that the defendant sent within thirty days of an earlier mailing created "a sense of urgency, and contradict[ed], obfuscate[d] and render[ed] confusing" the notice of rights the defendant included in the earlier mailing pursuant to § 1692g. No.00-C-463, 2000 WL 748124, *2 (N.D. Ill. May 31, 2000). Because of plaintiff's testimony that the later mailing—"one of the two communications that his lawyers . . . charged as integral to the gravamen of the class complaint"—did not confuse him, the *Turner* court concluded that the plaintiff was not typical of the members of the proposed class. *Id.* Unlike in *Turner*, this case does not involve § 1692g and, while Plaintiff argues that Defendants' debt collection practices are "false, deceptive, or misleading," and "unfair" under §§ 1692e(2), (5) & (10) and § 1692f(1), Plaintiff's claims, also unlike the claims of the *Turner* plaintiff, do not rest on the notion that Defendants' practices are "confusing."

Moreover, Defendants cite no case law to support their contention that actions under §§ 1692e(2), (5) & (10) and § 1692f(1) require proof that the alleged debtor was confused as a result of the Defendants' efforts to collect, and the court does not read the relevant provisions as imposing such a requirement. Section 1692e prohibits the use of "false, deceptive, *or* misleading representation or means in connection with the collection of any debt," and lists the following among examples of prohibited conduct: the false representation of "the character, amount, or legal status of any debt"; "the threat to take any action that cannot legally be taken or that is not intended to be taken"; and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692e(2), (5) & (10) (emphasis added). Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." Unconscionable and unfair conduct includes collecting any amount (e.g., interest, fee, other charges) unless the amount is "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

While evidence of confusion may be relevant to whether a debt collector's practices are "false, deceptive, or misleading" or "unfair or unconscionable," under § 1692e or § 1692f, nothing in the case law suggests that the Plaintiff in this case is *required* to prove "confusion." In *McMillan v. Collection Prof'ls Inc.*, the Seventh Circuit noted that "[w]hether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g[,]" but the court's reference was to the analysis of the mailing from the perspective of an unsophisticated debtor under all of these sections. 455 F.3d 754, 759 (7th Cir. 2006). In assessing whether the plaintiff in *McMillan* stated claims under § 1692e or § 1692f, the court never mentioned a "confusion" requirement and considered the plain language of the provisions in deciding whether the plaintiff had adequately stated her causes of action. *Id.* at 761, 765; *see also Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565-66 (7th Cir. 2004) (holding that plaintiff stated claims under § 1692e and § 1692f when

16

plaintiff alleged that the collection letter at issue "could conceivably mislead an unsophisticated consumer").

Even if there were a "confusion" requirement, Defendants have not satisfied the court that Plaintiff's claim is atypical. The excerpt of Plaintiff's testimony that Defendants have provided to the court does not include an admission by Plaintiff that he was not confused upon learning of Defendants' collection efforts against him. (*See* Ex. C. to Def. Opp'n to Class Cert.) To the contrary, Plaintiff testified that when he received a letter from one of the Defendants relating to the collection of his alleged debt, he "was bewildered wondering why did they send [him] a letter for this"; Plaintiff testified that he brought the matter up to his wife, who also did not know why he received the letter, and she told Plaintiff that he would "have to get an attorney to find out why [he owed] this money." (*Id.* at 51.) Plaintiff further testified that he found the initial state court complaint filed against him in Cook County false and misleading because he "never owed the money that's shown on the complaint" and because the complaint indicated that Defendants' books and records proved the account balance but there was no proof that he owed the alleged debt. (*Id.* at 53-54.)[8] Plaintiff's statements that he knew he did not owe the debt that Defendants were trying to collect and his decision to retain counsel to defend the collection action do not, as Defendants suggest, demonstrate that Plaintiff was not confused or misled.

The class claims set forth in the complaint allege that Defendants engage in deceptive and unfair acts through their practice of filing collection actions in the Illinois state courts; the court has been presented no reason to doubt that Plaintiff can represent the class in making these claims. (Compl. ¶¶ 33, 35.) While it is true that Plaintiff hired a lawyer to defend against PRA III's state court claim and ultimately prevailed in the state court collection action, this does not make Plaintiff's

---

[8]    Notably, after Plaintiff pointed out in his reply that he never testified that he was not confused by Defendants' collection action, (Pl. Reply in Support of Class Cert. at 14), Defendants did not contend otherwise or attach additional testimony to their subsequent sur-reply.

claims atypical as compared to those of other class members. The court finds, based on Plaintiff's testimony that he was "bewildered" upon learning of Defendants' efforts to collect from him, and his testimony that the account upon which Defendants were trying to collect was not an account that belonged to him, that Plaintiff's claims are typical of those of other class members challenging Defendants' collection practices as false, misleading, or deceptive representations in violation of § 1692e and unfair in violation of § 1692f.

### E.     Adequacy

Rule 23(a)(4) requires that the named plaintiff fairly and adequately protect the interests of the class. In determining whether the adequacy requirement is satisfied, the court considers whether the plaintiff's interests are antagonistic to the class, whether the plaintiff is sufficiently interested in the outcome to ensure vigorous litigation, and the qualifications and experience of plaintiff's counsel. *Gammon v. GC Servs. Ltd. P'ship*, 162 F.R.D. 313, 317-19 (N.D. Ill. 1995) (citations omitted). Nothing in the record suggests that Plaintiff and Plaintiff's attorneys do not meet the adequacy requirement in this case, and Defendants do not suggest otherwise. The courts finds that the adequacy requirement is satisfied at this time.

### F.     Predominance

The court has already concluded that Plaintiff's complaint raises questions to common to all class members: whether Defendants file lawsuits to collect debts without the ability to prove the existence of a debtor's indebtedness, and whether doing so violates the FDCPA. (*See supra* Section 2.C.) In addition, to satisfy Rule 23(b)(3), Plaintiff must demonstrate that these common questions predominate over individual issues, which is a far more demanding analysis. *Amchem*, 521 U.S. at 623-24. The predominance requirement ensures that a proposed class is "sufficiently cohesive to warrant adjudication by representation." *See Fisher v. Bristol-Myers Squibb Co.*, 181 F.R.D. 365, 368 (N.D. Ill. 1999) (quoting *Amchem*, 521 U.S. at 623). "This standard is met 'when

there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis, . . . [since s]uch proof obviates the need to examine each class member's individual position[.]'" *See Golon v. Ohio Sav. Bank*, No. 98 C 7430, 1999 WL 965593, *4 (N.D. Ill. October 15, 1999) (quoting *In re Industrial Gas Antitrust Litigation,* 100 F.R.D. 280, 288 (N.D. Ill. 1983)).

As Plaintiff notes, cases dealing with the legality of standardized documents or conduct are generally appropriate for class treatment because the document or conduct is the focus of the analysis. (Pl. Mem. in Support of Class Cert. at 11.) According to Plaintiff, the court should apply that principle in this case because Plaintiff and the class members dispute Defendants' use of standardized documents and conduct, more specifically, Defendants' submission of false affidavits and documents with complaints in state collection actions and Defendants' filing of lawsuits for claims they assertedly know they cannot prove. (*Id.*) Plaintiff asserts that, "there are no individual questions relating to liability which cannot be determined by ministerial inspection of defendants' records," demonstrating that common issues of law and fact predominate. (*Id.*) Defendants contend that "[e]ach of plaintiff's theories of recovery hinges on predominating individual questions" about what documents or evidence PRA has or can obtain from the creditor, and that even after the court identifies the available evidence, the court will still have to resolve individual legal questions to determine whether each class member has a valid claim. (Def. Opp'n to Class Cert. at 12-13.)

In his reply memorandum, Plaintiff acknowledges the existence of three "sub-classes," referred to as the "false-affidavit sub-class," the "account-stated sub-class," and the "time-barred debt sub-class," and suggests that common questions predominate over individual issues for each proposed sub-class. For the reasons explained here, the court concludes that multiple individual issues would remain to be examined in any "false-affidavit sub-class" or "account-stated sub-class," and no generalized evidence would obviate the need for such individual inquiries. Thus, the predominancy requirement is not met as to these sub-classes. For additional reasons explained below, the court declines to narrow Plaintiff's proposed definition and certify a "time-barred debt

sub-class."

### i.      The "False-Affidavit" Sub-Class

According to Plaintiff, Defendants have a policy and practice of filing lawsuits supported by false affidavits.  Plaintiff claims that, in connection with collection actions in Illinois state court, Defendants file affidavits in which the affiant professes to have "knowledge of [an alleged debtor's] account balance" and states that "there are no setoffs or counterclaims available to" the alleged debtor, despite that the affiant has no personal knowledge of the account balance and her affidavit is based solely on hearsay.  (Pl. Reply in Support of Class Cert. at 2.)  Defendants contend that to determine Defendants' liability as to the "false-affidavit sub-class," the court would have to inquire into the documents and information that Defendants had or could obtain on the account of each individual and whether this material gave the affiant knowledge of the balance due on each account.[9]  (Def. Opp'n to Class Cert. at 7-8.)  It is not proper for the court to consider the merits of Plaintiff's claim as it relates to the "false-affidavit sub-class" at this time, and the court considers underlying factual issues below only to the extent necessary to determine the prominence of the individual issues.  *See Williams*, 192 F.R.D. at 584 (citations omitted) (stating that if evidence relevant to class certification is "intertwined with the merits," the court's decision "may involve some consideration of the factual and legal issues" underlying the claim).

In Plaintiff's view, no individual inquiry is necessary to determine Defendants' liability to the members of the "false-affidavit sub-class."  Plaintiff contends that Elaine Lark, the individual who executed the affidavits for class members falling into this "sub-class," only compared the account balance stated in the affidavit, which was prepared by attorneys, to the information about the

---

[9]      The court has already explained why it declines to consider whether or not Defendants could have obtained additional documents from third parties.  (*See supra* n. 6.)  The court's rationale is particularly applicable in this context given that the allegedly false affidavits have already been executed, so information Defendants did not have at the time of execution could not have been considered.

account on Defendants' computer system, which was provided to Defendants by the seller of the charged-off account. (Pl. Reply in Support of Class Cert. at 2-3.) Plaintiff contends that this information consisted solely of the account number, debtor's name and address, charge-off date, loan date, and the balance of the account; thus, Plaintiff argues, the information Lark consulted for each affidavit was exactly the same and the court can determine, as to the whole class, whether Defendants' practice of filing collection actions with affidavits of this form violates the FDCPA. (*Id.*)

The court reads Lark's testimony somewhat differently. Lark did testify that she executes affidavits based on information from the seller, which Defendants maintain in an electronic file. (Lark Dep. at 21, Ex. A. to Pl. Reply in Support of Class Cert.) But Plaintiff cites no support in Lark's deposition for his assertion that "Lark does not review any other records prior to executing the affidavits." (*See* Pl. Reply in Support of Class Cert. at 3.) It is undisputed that in some instances Defendants do possess various account documents from the creditor/seller of the charged-off accounts. And, when asked whether she can see documents that Defendants might have from the original creditor during her review before executing an affidavit, Lark testified, "yes, I am able to retrieve those." (Lark Dep. at 18.) In Plaintiff's own case, Lark admitted that she did not have an account statement to show that Citibank had calculated the balance of Plaintiff's alleged debt correctly, (Lark Dep. at 27); but this illustrates why individualized inquiries are necessary to determine Defendants' liability under Plaintiff's false-affidavit theory. The court would have to make a number of inquiries for every class member that qualified for the class based on an allegedly false affidavit, such as: (1) what information Defendants had at the time the affidavit was executed; (2) what information was considered in the execution of the affidavit; and (3) whether or not the statements in the affidavit were false or misleading based on the unique information available with respect to each debt.

The need to make such individual inquiries has been interpreted as evidence that the

predominance requirement in Rule 23 is not met.  *See Sparano v. Southland Corp.*, No. 94-C-2098, 1996 WL 681273 (N.D. Ill. Nov. 21, 1996).  In *Sparano*, the proposed class of plaintiffs consisted of present and former owners of 7-Eleven franchises who claimed, in relevant part, that the defendants breached their franchise agreements by "failing to spend an adequate amount of money on repairs, remodels, equipment and advertising."  *Id.* at *1.  The agreement only required defendants to make repairs "'when it [deemed them] necessary'"; thus, the court would have to determine the circumstances and conditions of each franchise to determine what expenditures defendants were obligated to make.  *Id.* at *2.  The court concluded that the plaintiffs did not meet the predominance requirement, or even the commonality requirement, due to the need to inquire into the circumstances of each class member, and declined to certify the class.  *Id.*; *see also Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 75-76 (D. N.J. 1993) (declining to certify class of automobile dealers claiming that Ford's reimbursement practices violated state law when dealers relied on same theory of recovery but "resolution of [their] claims [could] only be decided on a dealer-by-dealer, part-by-part, sale-by-sale basis."); *McGarvey v. Citibank (South Dakota) N.A.*, No. 95-C-123, 1995 WL 404866, *6 (N.D. Ill. July 5, 1995) ("Certification under Rule 23(b)(3) is improper where liability determinations are both individual and fact-intensive.") (citing *Liberty Lincoln Mercury*, 149 F.R.D. at 76 n.21).

Plaintiff insists that this case differs from *Sparano* and *Liberty Lincoln Mercury* because this case requires only a basic examination of Defendants' account files to discover whether certain documents are present.  (Pl. Reply in Support of Class Cert. at 12.)  *Heastie v. Community Bank*, a case that Plaintiff himself cites, however, illustrates how the inquiries in this case are far more complicated than merely ministerial inquiries.  125 F.R.D. 669 (N.D. Ill. 1989).  In *Heastie*, the plaintiff claimed that the defendant schemed with contractors to convince consumers to enter into contracts with relatively favorable credit terms, and then switched them to more costly financing with defendants.  *Id.* at 675.  The plaintiff claimed that the proper measure of damages was the

difference between the original contract terms and the terms eventually obtained from the defendant. *Id.* at 675. The *Heastie* court concluded that it would be "relatively simple to determine, merely by comparing" the two contracts, the damage incurred; the court further stated, "[t]his should not require even a hearing." *Id.* The inquiry here is not merely a determination of damages, nor is it a simple comparison; rather, the court would have to obtain extensive information from Defendants and Lark on each relevant account file and assess the merits of a class member's claim based on information unique to that class member. Accordingly, generalized class-wide evidence will not help the court to resolve whether Defendants are liable to the false-affidavit sub-class. *See Golon*, 1999 WL 965593, at *4 (predominance requirement met when generalized evidence will prove or disprove an element "on a simultaneous class-wide basis," obviating "the need to examine each class member's" position).

The parties debate a variety of other issues related to Plaintiff's false-affidavit theory of liability, none of which alter the court's conclusion. Plaintiff suggests that, because Lark has no personal knowledge of the account balances to which she attests, all of the affidavits are based on hearsay, and are false. (Pl. Mem. in Support of Class Cert. at 2.) This argument reaches the merits of Plaintiff's claim—whether Defendants made false representations in connection with collecting a debt—and the court declines to discuss the merits at the class certification stage. *See Eisen*, 417 U.S. at 178. Defendants raised the argument that Lark was competent to attest to information in business records that she reviewed, (Def. Opp'n to Class Cert. at 7), which prompted a lengthy debate between the parties regarding hearsay, who is competent to testify to business records, and the requirements for testimony by affidavit. (*See* Pl. Reply in Support of Class Cert. at 3-5; Def. Sur-Reply in Opp'n to Class Cert. at 1-3; Pl. Response to Sur-Reply at 1-5.) The issue of whether Defendants have violated the FDCPA by attaching to state court complaints affidavits that Plaintiff claims are false and misleading is distinct from the issue of whether or not these affidavits are admissible. The former issue relates to the merits of the action, which this court will not consider

at the class certification stage. The latter issue, and the various cases cited by Plaintiff to support its interpretation of state law, is not relevant to class certification or this case, as the fact that an affidavit attached to a complaint may be inadmissible for certain purposes does not speak to whether Defendants have violated the FDCPA. To clarify, the court does not disagree with Plaintiff's general argument that false representations in connection with the collection of any debt violates the FDCPA; indeed, § 1692e states just that. But, the fact that an affidavit constitutes inadmissible evidence does not necessarily render the affidavit "false" or "misleading" within the meaning of the FDCPA; this determination is something, as outlined above, that requires individualized inquiry.[10]

### ii.    The "Account-Stated" Sub-Class

Plaintiff also contends that "defendants have a policy and practice of filing lawsuits supported by insufficient documentary evidence to establish the debtor's indebtedness on an account-stated theory." (Pl. Reply in Support of Class Cert. at 6.) According to Plaintiff, in order to establish indebtedness on an "account stated" theory, Defendants must have "an original or an image of a statement of account sent to the debtor in the ordinary course of business, [and] an original or an imagine of an account agreement or contract, or any means of proving its terms"; thus, Plaintiff argues, any individual issues "can be readily answered from a ministerial inspection of defendants' files." (*Id.* at 6-9; Pl. Mem. in Support of Class Cert. at 7.) Defendants contend that determining whether Defendants had the means to prove an alleged debt's existence requires more than a ministerial inquiry into Defendants' files; according to Defendants, this inquiry depends on the evidence already in Defendants' possession or available to Defendants, and whether such

---

[10]    Plaintiff cites a number of cases to for the proposition that "false representations in judicial proceedings are an FDCPA violation." (Pl. Response to Sur-Reply at 5-6.) As explained above, the court does not take a different view, and it need not discuss these authorities.

evidence proves the terms of the agreement and that account statements were sent. (Def. Opp'n to Class Cert. at 7-8.) While the court's reasoning differs slightly from Defendants', the court finds that individual issues predominate among class members in the "account-stated sub-class" because of the degree of individual inquiry necessary to resolve whether Defendants' are liable to these sub-class members under the FDCPA.

In order to determine whether Plaintiff's "account-stated" theory requires an individualized inquiry into the factual and legal claims of each class member, the court must briefly consider what documentation is necessary to prove a debt under an "account-stated" theory. Under Illinois law, an "account stated" is "an agreement between parties who have previously conducted monetary transactions that the account representing the transactions between them is true, and that the balance is accurate, together with a promise to pay such balance." *Toth v. Mansell*, 207 Ill. App. 3d 665, 671, 566 N.E.2d 730, 734-35 (1st Dist. 1990) (citing *W.E. Erickson Constr., Inc. v. Congress-Kenilworth Corp.*, 132 Ill. App. 3d 260, 477 N.E.2d 513 (1st Dist. 1985); *LaGrange Metal Prods. v. Pettibone Mulliken Corp.* 106 Ill. App. 3d 1046, 436 N.E.2d 645 (1st Dist. 1982)). As Plaintiff argues, Illinois law is clear that "an account stated is merely a form of proving damages for the breach of a promise to pay on a contract." *Dreyer Med. Clinic, S.C. v. Corral*, 227 Ill. App. 3d 221, 226, 591 N.E.2d 111, 114 (2d Dist. 1992). In other words, "an account stated cannot be made the instrument to create an original liability"; it only determines the amount of debt in cases where liability previously existed. *Id.* (citations omitted). For example, in *Dreyer Medical Clinic*, the plaintiff sought payment of medical bills but did not submit evidence of an agreement to pay for medical services. *Id.* at 224. The court concluded that the plaintiff had failed to prove any liability, and, as a result, could not establish an "account stated." *Id.* at 226-27. In contrast, the court in *Soft Water Service, Inc. v. M. Suson Enterprises, Inc.*, found that the theory of "account stated" was a proper basis upon which the defendant could be held liable for her failure to pay for merchandise

that the plaintiff sold and delivered to her. 39 Ill. App. 3d 1035, 1036, 1040, 351 N.E.2d 264, 266,

269 (1st Dist. 1976). In that case, the court first demonstrated that "there was an original liability

on the part of the defendant to pay plaintiff the amount due[,]" and then concluded that the

defendant had recognized the correctness of the account and had impliedly promised to pay the

balance by receiving and retaining invoices and a demand for payment sent by the plaintiff and by

submitting payments to the plaintiff. *Id.* at 1039-40, 351 N.E. 2d at 268-69.

As the court understands Plaintiff's argument, Defendants must attach a signed contract or

credit agreement when bringing collection actions in state court because the "account-stated"

theory hinges on having established original liability—in other words, the existence of a credit

agreement: "[a]bsent agreement as to the debtor's underlying liability, a signed contract or credit

agreement is essential." (Pl. Reply in Support of Class Cert. at 7-8.) This very requirement

demonstrates, in the court's view, that it is not possible to resolve the claims of the "account-stated

sub-class" without considering individual questions. Plaintiff denies owing the debt that was the

subject of the collection action Defendant PRA III brought against him in Cook County, (Pl. Mot. for

Class Cert. at 2); as *Dreyer* demonstrates, this denial makes proof of original liability necessary to

resolve Plaintiff's claim. The court is unable to ascertain whether other sub-class members deny

owing their debts without exploring this question with each class member. This information is

necessary as it determines the proof that Defendants needed to bring a collection action against

each of the class members.[11] The court views gathering such information as far more complicated

---

[11]     Plaintiff contends that Defendants need to attach a signed credit agreement in all
collection actions because Section 2-606 of the Illinois Code of Civil Procedure requires that
documents on which an action is founded be attached to a complaint. *See* 735 ILCS 5/13-206. (Pl.
Reply Mem. in Support of Class Cert. at 6-7.) While this may be Illinois' civil procedure law, in the
court's view, a failure to attach a signed agreement to a complaint against a debtor where the
debtor does not contest that the agreement existed is not necessarily equivalent to a violation of
the FDCPA. This question is one relating to the merits of this action, and the court will not address
it here.

than a ministerial look into Defendants' files; the inquiry is not based on objective information and is likely to require questioning of each class member.[12]

In addition to *Sparano*, discussed *supra*, a number of other cases confirm that when individualized inquiry is necessary, individual issues predominate. Like this case, the plaintiffs in *Thompson v. Spinelli* moved to certify a class for a claim brought under the FDCPA. No. 04-C-8224, 2005 WL 2483376, *1 (N.D. Ill. Oct. 5, 2005). The plaintiffs in *Thompson* challenged the defendant's inclusion of an $8.00 credit card processing fee in a collection letter sent to collect an alleged debt incurred for personal, family or household purposes. *Id.* In relevant part, the FDCPA prohibits the collection of such a fee unless it is "expressly authorized by the agreement creating the debt or permitted by law." *Id.* Because the court would be required to examine every class member's agreement to determine whether it authorized the fee, the court found that the plaintiffs had not met their burden to show that common issues would predominate. *Id.* at *3. Similarly, in *Rogers v. Wexler*, also brought under the FDCPA, the court did not certify a class of debtors from whom the defendant had tried to collect allegedly excessive attorney's fees because an "individual-specific examination" of the reasonableness of the fee request would be necessary; the court held that the plaintiff had failed to meet Rule 23's predominance requirement. No. 01-C-1943, 2002 WL 484894, *5 (N.D. Ill. Mar. 28, 2002). For the reasons stated above, the court is similarly not satisfied in this case that common issues will predominate in the claim asserted by an "account-stated sub-class."[13]

---

[12] Because this inquiry is more than ministerial, the court need not address the litany of cases Plaintiff cites in support of the principle that individual issues that can be answered by a ministerial inspection of files are not barriers to class certification. (Pl. Reply in Support of Class Cert. at 8-9.)

[13] It is therefore unnecessary for the court to address the parties' lengthy discussion regarding whether Defendants could offer testimony in lieu of attaching a signed agreement to a complaint in a collection action. (Def. Opp'n to Class Cert. at 8-9, Pl. Reply in Support of Class (continued...)

### iii.    The "Time-Barred Debt" Sub-Class

Finally, Plaintiff contests Defendants' alleged "policy and practice of filing lawsuits without an original or an image of an account agreement or contract signed by the debtor" where the debt was charged-off five years prior to the date of filing.  (Pl. Reply in Support of Class Cert. at 10.)  Illinois has a five-year statute of limitations for suits based on unwritten contracts.  *See Tech. Solutions Co. v. Northrop Grumman Corp.*, 356 Ill. App. 3d 380, 826 N.E.2d 1220 (1st Dist. 2005) ("[T]he Illinois statute of limitations with respect to oral contracts is five years.") (citing 735 ILCS 5/13-205).  Defendants argue that their ability to prove that a class member, sued by Defendants more than five years after the member's debt was charged-off, signed an agreement, depends on what documents and information are available to Defendants regarding that class member, which is an individual issue.  (Def. Opp'n to Class Cert. at 7.)  As explained below, the court is not persuaded by this argument but nevertheless declines to certify the proposed sub-class.

In Illinois, courts strictly interpret the meaning of a written contract for statute of limitations purposes.  *Brown v. Goodman*, 147 Ill. App. 3d 935, 939, 498 N.E.2d 854, 857 (1st Dist. 1986).  A contract is considered to be written, for statute of limitations purposes, "if all the essential terms of the contract are in writing and are ascertainable from the instrument itself."  *Id.* (collecting cases).  Defendants interpret this language in *Brown* to authorize the application of the ten-year statute of limitations for written contracts "as long as there exists some instrument from which the essential terms of the [debtor's credit] agreement can be ascertained."  (Def. Sur-Reply in Opp'n to Class Cert. at 4.)  Defendants thus argue that, for each member of the "time-barred debt sub-class, the court would have to inquire whether Defendants could obtain a writing or testimonial evidence

---

[13](...continued)
Cert. at 6- 7; Def. Sur-Reply in Opp'n to Class Cert. at 3.)  Even if the court found, as Plaintiff urges, that Defendants cannot offer testimony in lieu of attaching a signed credit agreement, the court would still need to make individual inquiries as to which class members disputed their liability over the alleged debt.

showing the terms to which the debtor had agreed.  (*Id.*)

In the court's view, *Brown* does not support Defendants' position.  In *Brown*, the contract at issue, an option agreement, did not name the defendant as a party, but the plaintiff argued that because the defendant's identity as a party to the option agreement was ascertainable from several other writings, the option agreement should be considered a written contract and the ten-year statute of limitations should apply.  147 Ill. App. 3d at 940.  The *Brown* court rejected the plaintiff's position, and stated that when parol evidence is needed to ascertain the complete terms of a contract, the contract is treated as an oral contract.  *Id.* at 939.  The court's reasoning leaves no doubt that the essential terms of a contract must be ascertainable "from the written instrument *itself*"; otherwise, the instrument is not considered a complete written contract for statute of limitations purposes.  *Id.* at 940-41 (emphasis added).  In this case, because a complete written contract is required to qualify for the ten-year statute of limitations, other documents or testimonial evidence from which the court could ascertain the terms of the debtor's agreement are not sufficient to qualify a contract as "written" for statute of limitations purposes.  Accordingly, in order to determine liability to any "time-barred debt sub-class," the court would not need to undertake the individual inquiries that Defendants urge would be necessary, and generalized evidence would suffice to determine whether Defendants had violated the FDCPA in bringing claims against members of this sub-class.

The parties' remaining arguments regarding the "time-barred debt sub-class" are not relevant to a decision on class certification.  Defendants suggest that Plaintiff's class theories improperly attempt to use the FDCPA as a vehicle for enforcing state law.  (Def. Sur-Reply in Opp'n to Class Cert. at 4-5.)  While Defendants are correct that the Seventh Circuit cautioned against using the FDCPA to enforce state law in *Olvera v. Blitt & Gaines, P.C.*, this issue is not relevant at the class certification stage.  *See* 431 F.3d 285, 287 (7th Cir. 2005).  To the extent the court has

considered state law on the statute of limitations here, it has been solely for the purpose of determining whether or not individual issues predominate with regard to the "time-barred debt sub-class"; while the court does not preclude that such an argument may be relevant at the merits stage, no enforcement of state law is attempted at this stage by plaintiff or the court. Defendants also note that, in *Olvera*, the Seventh Circuit disapproved of suits under the FDCPA that interfere with a debt purchaser's ability to collect defaulted debts, and argue that Plaintiff is improperly suggesting that institutions like Defendants will never have sufficient documents to sue on those debts without violating the FDCPA. (Def. Sur-Reply in Opp'n to Class Cert. at 5.) Again, while this argument may be proper at the merits stage, the court declines to consider it at the class certification stage.

For the reasons discussed above, the court concludes that individual issues predominate over common ones with respect to the claims of the "false-affidavit sub-class" and "account-stated sub-class," but not the "time-barred debt sub-class." Even though the "time-barred debt sub-class" does meet the predominance requirement, the court nevertheless declines to narrow Plaintiff's proposed class definition and certify a class of only those members that belong to this sub-class. Plaintiff himself may well be a member of the "time-barred debt sub-class;" Defendants did not attach an original or image of a contract signed by Plaintiff to the complaint in the Cook County case and Plaintiff asserts that his alleged debt was charged-off over five years prior to the date of filing. (Pl. Reply in Support of Class Cert. at 11.) The court does not have adequate information, however, to determine that such a class would meet all of the necessary requirements of Rule 23, particularly the numerosity requirement. Accordingly, the court declines to narrow Plaintiff's proposed class definition in this manner.[14]

---

[14] For similar reasons, the court declines to narrow Plaintiff's proposed class definition in any other way. It may be the case that some of the individual issues the court identified in the course of this opinion would not apply to a class of individuals composed only of those individuals
(continued...)

Because of the conclusions stated above, the court need not discuss whether the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. It is true that some debtors may not be aware that their rights are being violated and might be unlikely to sue Defendants individually, factors which weigh in favor of class certification. The predominance of individual issues among the members of the class that Plaintiff has proposed would, nevertheless, render the class action mechanism inefficient and inconvenient in this case. *See Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 301-02 (N.D. Ill. 2005) (citations omitted) (stating that where individual issues predominate, class certification is usually not a superior method by which to resolve the controversy because it will not be efficient).

## CONCLUSION

For the reasons stated above, the court denies Plaintiff's motion for class certification (41).

ENTER:

Dated: March 5, 2007

REBECCA R. PALLMEYER

United States District Judge

---

[14](...continued)
sued in state court collection actions despite the fact that Defendants had no documents whatsoever pertaining to their alleged debts. But, given that PRA III attached what Defendants claim to be an account statement pertaining to Plaintiff's own alleged debt in the Cook County case, it is not clear to the court, based on the information before the court at this time, that Plaintiff himself would fall into a class so defined and whether such a class would meet all of Rule 23's requirements. (*See* Ex. D to Compl.)